IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Aggie Services, Inc., | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL |
| Golden Eggs Brunchery. | |
| Defendant. | |

## COMPLAINT

Plaintiff AGGIE SERVICES, INC. (hereinafter "AGGIE"), a South Carolina S Corporation, by its undersigned attorneys, sues Defendant GOLDEN EGGS BRUNCHERY (hereinafter "GOLDEN EGGS"), and alleges as follows:

### PARTIES

1. Plaintiff, AGGIE is a South Carolina S Corporation, providing restaurant services, with its principal place of business located at 415 Highway 17 North, Surfside Beach, SC 29575.

2. Defendant, GOLDEN EGGS is a limited liability company providing restaurant services, with its principal place of business located at 1610 S Kings Hwy, Myrtle Beach, SC 29577.

### JURISDICTION AND VENUE

3. This action arises under the Lanham Act of the United States, 15 U.S.C. § 1051 et seq.as a result of Defendant's infringement of the Plaintiff's registered and common law

1

trademarks and service mark rights, and other unlawful activities conducted by Defendant in connection with such infringement.

4. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, 1367 and 1338, and the doctrine of pendent and ancillary jurisdiction.

5. This Court has personal jurisdiction over Defendant because it: (a) regularly conducts business and transacts business within the State of South Carolina; (b) has committed acts of trademark and service mark infringement in the State of South Carolina causing injury within the State of South Carolina; and (c) maintains a principal place of business in the State of South Carolina.

6. Venue is proper in this District and this Court pursuant to 28 U.S.C. § 1391(b)

**FACTUAL BACKGROUND**
**Plaintiff and its Trademarks and Service Marks**

7. Since April 01, 1991, Plaintiff has been providing restaurant services under the mark GOLDEN EGG ("the Trademark"). Plaintiff has provided such services continuously and without interruption, since opening in 1991 through the present. Since opening in Surfside Beach, South Carolina, Plaintiff's business has gained popularity with its customers and its demand increased significantly.

8. Plaintiff's success is due substantially to its branding and the quality control exercised over the use of its marks. In order to protect what it considers one of its most valuable assets, namely, the name of its restaurant, Plaintiff filed for and obtained a federal trademark registration for its Trademark from the United States Patent and Trademark Office. Plaintiff is the owner of US Registration No. 5589879 ("the '879 Registration), which is registered on the Principal Register of the United States Patent and Trademark Office.

9. On March 16, 2018, Plaintiff filed a federal trademark application (U.S. Ser. No. 87-837,480) for the mark GOLDEN EGG as used in connection with restaurant services in Intl. Class 43, and with a date of first use of April 01, 1991. The '879 Registration issued on October 23, 2018.

10. The '879 Registration is valid, continuing and constitute prima facie evidence of Plaintiff's ownership of the Trademark and the Registration, the validity of the Trademark and the '879 Registration and of Plaintiff's exclusive rights to use the Trademark in commerce on and in connection with the services recited in the Registration. A true and correct copy of the United States Patent and Trademark Office certificate of registration for the Trademark are attached hereto as Exhibit A and incorporated herein by this reference. The '879 Registration constitutes conclusive evidence of Plaintiff's exclusive rights to use its Trademark in connection with its services.

11. In addition to Plaintiff's registered Trademark, through continuous and exclusive use of the Trademark, Plaintiff has acquired common law trademark rights in the Trademark.

12. Plaintiff acquired its common law rights and registrations in the Trademark years prior to the acts of Defendant complained of herein. Those common law rights include the geographic area of the southeastern United States.

13. Plaintiff has expended a great deal of time, effort and money in the promotion and advertisement of its Services offered for sale and sold in connection with the Trademark.

14. Plaintiff's growth and tremendous success is due in large part to the public's recognition of the high quality goods and services Plaintiff provides under the Trademark.

15. As a direct result of Plaintiff's efforts, the general public associates the Trademark, when used by Plaintiff, as identifying Plaintiff as the single source of the goods and services sold

and offered for sale under the Trademark. The Trademark distinguishes Plaintiff's services from products and services offered by others. Without question, the Trademark is unique and arbitrary. As a result of the widespread and continuous use and promotion of the Trademark, it is distinctive and has acquired secondary meaning in the minds of customers.

16. Also as a result of Plaintiff's widespread and continuous use and promotion of the Trademark in connection with restaurant services, the Trademark have become widely known and recognized as identifying Plaintiff as the source of the goods and services. The Trademark represents and embodies the enviable reputation and very valuable goodwill of Plaintiff among members of the trade and the purchasing public.

### Defendant

17. Defendant is operating a restaurant under the name GOLDEN EGGS BRUNCHERY, which has caused and will cause confusion in the market place and infringes upon Plaintiff's rights. Defendant receives a direct benefit from the infringing activities. A copy of Defendant's use of the infringing mark is attached hereto as Exhibit B.

### Trademark and Service Mark Infringement

18. Prior to filing this lawsuit, Plaintiff, through its legal counsel, demanded in writing that Defendant cease using the Trademark and contact Plaintiff's counsel to coordinate an immediate cessation of all uses of the Trademark. Plaintiff's counsel sent a cease and desist letter on April 03, 2025. Defendant failed to respond to this letter. A copy of the April 03, 2025 cease and desist letter is attached hereto as Exhibit C.

19. Defendant's unauthorized use of the Trademark creates a likelihood of confusion, mistake, and deception as to the source and sponsorship of their goods and services such that

consumers are likely to believe, contrary to fact, that Defendant's business is associated or affiliated with Plaintiff and that Defendant's business is an authorized licensee, which it is not, all to Plaintiff's irreparable loss and damage. In addition, Defendant's acts complained of herein injure Plaintiff's valuable goodwill and well established business reputation.

20. Not only is confusion likely, but actual confusion with the public is occurring, as Plaintiff has received inquiries from customers and vendors regarding the relationship between Plaintiff's business and Defendants' on social media. Examples of evidence illustrating such actual confusion are attached hereto as Exhibit D.

21. The likelihood of confusion resulting from Defendant's conduct is substantial and supported by multiple factors recognized under governing precedent, including *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522 (4th Cir. 1984), and *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).

22. **Similarity of the Marks**: Defendant's mark "GOLDEN EGGS BRUNCHERY" is visually, aurally, and conceptually similar to Plaintiff's registered and common law mark "GOLDEN EGG." The use of the nearly identical dominant phrase "GOLDEN EGG(S)" creates the impression of a shared source or affiliation, despite the minor pluralization and addition of a descriptive term.

23. **Similarity of the Services**: Both Plaintiff and Defendant operate restaurants offering restaurant services to the general public. These services are marketed to the same class of consumers through similar channels.

24. **Geographic Proximity**: The parties operate within a narrow geographic radius in coastal South Carolina, specifically within the Myrtle Beach area. This physical proximity

5

increases the potential for consumer confusion and supports the inference that customers are likely to encounter both parties' services in overlapping marketplaces.

25. **Strength of the Plaintiff's Mark**: Plaintiff's GOLDEN EGG mark is arbitrary as applied to restaurant services and has been used continuously since April 1, 1991. It is federally registered and has acquired distinctiveness and secondary meaning through decades of uninterrupted and exclusive use.

26. **Evidence of Actual Confusion**: Plaintiff has received inquiries from customers and vendors regarding the relationship between Plaintiff and Defendant. This evidence of actual confusion—including inquiries on social media—is documented in Exhibit D and confirms that the relevant public has been misled or is likely to be misled.

27. Defendant was placed on actual notice of Plaintiff's prior rights in the GOLDEN EGG trademark by way of a cease and desist letter sent by Plaintiff's counsel on April 3, 2025, a copy of which is attached hereto as Exhibit C. Despite this formal notice, Defendant failed to respond or cease its infringing conduct. Defendant's continued use of the infringing GOLDEN EGGS BRUNCHERY mark following this notice demonstrates willful infringement and bad faith.

28. Defendant's actions were and continue to be taken in willful and malicious disregard of Plaintiff's rights.

29. Defendant's infringing activities have caused Plaintiff monetary harm.

30. Defendant's unauthorized use of Plaintiff's Trademark is a deceptive practice that has an adverse impact on the public interest.

31. By virtue of Defendant's actions described herein, Plaintiff is being irreparably harmed and does not have an adequate remedy at law because Plaintiff's special interest in protecting the integrity of the Trademark and in preventing customer confusion are being seriously

threatened. Actual confusion of purchasers has already occurred and will continue to occur in the future unless Defendant is enjoined from continuing its unlawful conduct. Plaintiff's irreparable injury also includes, without limitation, harm to the value of its goodwill and business reputation and its ability to exclusively maintain its Trademark to the exclusion of all others. Defendant is also irreparably harming the ability of Plaintiff to maintain its relationships with its existing and identifiable prospective customers.

32. Plaintiff is likely to succeed on the merits of its claims. Any harm to Defendant if injunctive relief is granted would be outweighed by the harm that would result to Plaintiff if injunctive relief is not granted. The public interest would be served by the granting of injunctive relief

33. Plaintiff has hired the undersigned law firm and obligated itself to pay a reasonable attorneys' fee.

34. All conditions precedent to the bringing of this action has occurred, have been performed, have been fulfilled, or have been waived.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. $ 11141)

35. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 34 above as if fully set forth herein.

36. This count is for infringement of a federally registered service mark in violation of the Lanham Act, 15 U.S.C. § 1051-1129.

37. The acts of Defendant complained of herein constitute trademark and service mark infringement of Plaintiff's federally registered Trademarks, as depicted in the '879 Registration, in violation of 15 U.S.C. § 1114-1118.

38.     By virtue of the foregoing conduct and as a proximate result there from, Plaintiff has been damaged.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. S 1125(a)**

39.     Plaintiff repeat and reallege each and every allegation of paragraphs 1 through 38 above as if fully set forth herein.

40.     This count is for infringement of common law trademark and service mark rights and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051-1129.

41.     Through continuous and exclusive use of the Trademark, Plaintiff has acquired common law rights in its Trademark. Plaintiff possesses common law rights in the same geographic areas that Defendant operates. Plaintiff's common law Trademark rights were established across the southeastern United States, and particularly in the State of South Carolina, well before Defendant first advertised and sold its infringing goods within the State of South Carolina.

42.     Defendant's acts set forth above are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods and services, in violation of 15 U.S.C. § 1125(a).

43.     By virtue of the foregoing conduct and as a proximate result there from, Plaintiff has been damaged.

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

44. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 43 above as if fully set forth herein.

45. This count is for trademark and service mark infringement and unfair competition under the common laws of the State of South Carolina.

46. Through continuous and exclusive use of the Trademark, Plaintiff has acquired common law rights in its Trademark. Plaintiff possesses common law rights in the same geographic areas that Defendant operates its restaurant.

47. Defendant's acts set forth above are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods and services, in violation of the common laws of the State of South Carolina.

48. By virtue of the foregoing conduct and as a proximate result there from, Plaintiff has been damaged.

## COUNT IV
## UNJUST ENRICHMENT

49. Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 48 above as if fully set forth herein.

50. This count alleges that Defendant has been unjustly enriched by their illegal and improper actions.

51. Defendant has controlled, misappropriated and used the Trademark for their own advantage.

52. Through the unlawful and improper conduct described above, Defendant has, at the expense of Plaintiff, been unjustly enriched and should not be entitled to retain those benefits.

53. Plaintiff is entitled to restitution of the amount by which Defendant was, and continues to be, unjustly enriched, and Defendant should be estopped from inequitably retaining such benefits.

## COUNT V
## TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

54. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 53 above as if fully set forth herein.

55. Plaintiff's GOLDEN EGG trademark is distinctive and has acquired secondary meaning through decades of continuous and exclusive use in commerce in connection with high-quality restaurant services.

56. The GOLDEN EGG mark is widely recognized in the State of South Carolina and throughout the southeastern United States as a unique source identifier for Plaintiff's restaurant services.

57. Defendant's use of the GOLDEN EGGS BRUNCHERY mark is likely to dilute the distinctive quality of Plaintiff's mark by blurring, thereby lessening the capacity of the mark to identify and distinguish Plaintiff's services.

58. Defendant's conduct constitutes trademark dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

59. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm, including harm to its reputation, goodwill, and the distinctive value of its GOLDEN EGG trademark.

60. Pursuant to 15 U.S.C. § 1125(c), Plaintiff is entitled to injunctive relief, an award of damages, and other available remedies, including attorneys' fees and costs.

## COUNT VI
## VIOLATION OF SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (SCUTPA) – S.C. CODE ANN. § 39-5-10 ET SEQ.

61. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 60 above as if fully set forth herein.

62. Defendant's unauthorized and deceptive use of Plaintiff's Trademark constitutes unfair methods of competition and deceptive acts or practices in the conduct of trade or commerce within the meaning of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et seq.

63. Defendant's conduct has affected and is capable of affecting the public interest by misleading consumers into believing that Defendant's goods and services are affiliated with or endorsed by Plaintiff.

64. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including, but not limited to, monetary loss, reputational harm, and loss of goodwill.

65. Defendant's acts were willful, knowing, and undertaken in bad faith, thereby entitling Plaintiff to an award of treble damages pursuant to S.C. Code Ann. § 39-5-140.

66. Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred in connection with this action pursuant to S.C. Code Ann. § 39-5-140.

**WHEREFORE**, Plaintiff AGGIE demands judgment against Defendant GOLDEN EGGS, as follows:

> (a) A declaration that Plaintiff is the owner of the entire right, title, and interest in and to the Trademark and the '879 Registration;

(b)   A declaration that Defendant has engaged in unlawful and deceptive trade practices in violation of the South Carolina Unfair Trade Practices Act;

(c)   A preliminary injunction, and upon final hearing a permanent injunction, enjoining Defendant, its agents, employees, and any persons acting in concert with Defendant, from:

   (i) improperly using or misappropriating, directly or indirectly, the Trademark or any colorable imitation thereof or mark confusingly similar thereto;

   (ii) holding themselves out to the public as being an authorized licensee of Plaintiff or as being affiliated with or sponsored by Plaintiff in any manner, or committing any acts likely to imply such a relationship or affiliation;

   (iii) passing off their products and services as originating with or sponsored or authorized by Plaintiff; and

   (iv) otherwise engaging in unfair or deceptive practices in violation of South Carolina law;

(d)   An order requiring Defendant to deliver up to Plaintiff for destruction all signs, advertisements, literature, business forms, cards, labels, packages, wrappers, pamphlets, brochures, receptacles, point of sale displays, and any other products in their possession or under their control, as well as any products which bear the Trademark or any colorable imitation thereof or any mark confusingly similar thereto, and any plates, molds, and other means of making the same;

(e)   A preliminary injunction, and upon final hearing a permanent injunction, ordering Defendant to notify all of their existing and prospective customers of the Court's Order;

(f)   An order requiring Defendant to file with this Court and serve on Plaintiff within thirty (30) days after the entry of an injunction in this cause, a written report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(g)   An award of actual damages, trebled pursuant to S.C. Code Ann. § 39-5-140;

(h)   An award of Plaintiff's reasonable attorneys' fees and the costs of this action;

(i)   Prejudgment interest; and

(j)   Such further relief as this Court deems proper.

12

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all issues so triable as a matter of right.

SOUTHEAST IP GROUP, LLC

/s/ Thomas L. Moses
Thomas L. Moses
Fed. ID 7049
SOUTHEAST IP GROUP, LLC
139 Commons Way
Greenville, South Carolina 29611
Telephone: (864) 509-1905
Facsimile: (864) 509-1907
E-mail: tmoses@seiplaw.com

*Attorney for Plaintiff*

Greenville, SC
April 25, 2025